## Arthurs *versus* Smathers.

*Sale of Seated Lands for Taxes, Notice to Owner.—Right of Land-owner to redeem.—Transfer from seated to unseated list.—Assignments of Error, how made.*

1. Where seated lands are sold for taxes, under Act of 29th April 1844, the owner must have actual notice from the treasurer of the county where the lands lie. He has the right to await such notice, and is entitled to one year thereafter to redeem.

2. Land once seated and occupied by residence and cultivation cannot be assessed and sold as unseated, where the dereliction of possession was but little more than one year; but it may be transferred from the seated to the unseated list without notice to the owner.

3. Under the rules of the Supreme Court (6 Harris), assignments of error to the answer of the court below to points, will be dismissed if the point do not appear upon the paper-book.

4. Laird *v.* Heister, 12 Harris 453, affirmed.

Error to the Common Pleas of *Jefferson county.*

This was an action of ejectment brought by R. Arthurs against C. Smathers, to recover a tract of land containing about eighty acres, in Pine Creek township.

It was admitted that the title was out of the Commonwealth and in John Heath. For some time previous to 1845 the land had been assessed in the unseated list as of seventy-five acres. In 1845 it was assessed in the seated list, and sold by the treasurer, June 12th 1848, to A. Arthurs, under the 41st section of the Act of April 29th 1844, and a deed duly acknowledged and delivered to him.

For the years 1847, '48, '49, and '50, it was assessed in the seated list, and in June 1850 was again sold for the tax of 1847, at which sale Arthurs again became the purchaser, and received a deed from the treasurer.

In 1851 the land was again assessed in the seated list. After the assessment was made, the word "unseated" was written in the duplicate, but when or by whom this was done did not appear; it did not appear in the assessor's list of unseated lands for that year.

In June 1852 the treasurer sold the land for taxes based on the assessment of 1851 as unseated, when Arthurs again became the purchaser, and received a deed in due form. No notice was ever given by the treasurer to the assessor of the sale of this land. This was the plaintiff's title.

The defendant claimed under a title derived as follows:—John Heath was largely indebted to Wood & Oliver, wholesale merchants, of Philadelphia, and having removed to the state of Indiana, Wood & Oliver sent their claim to that state, and

brought suit in the Circuit Court of the United States, and obtained a judgment. They then procured an exemplification of the record of that judgment, and entered it up in the Common Pleas of Jefferson county, in the same manner as exemplifications of judgments in one county of the state of Pennsylvania are entered in another county. Upon the judgment entered on this exemplification a *sci. fa.* was issued, to revive to No. 42, February Term 1852, upon which there was a return of two *nihils*, and at the May Term 1852, on motion, the court entered judgment for want of an appearance, which judgment was liquidated by the prothonotary, under the rules of court.

Upon this judgment of revival, a *fi. fa.* was issued to No 69, February Term 1853, by virtue of which the sheriff levied upon the land in controversy ; a condemnation was had, and the land was sold by the sheriff upon *vend. exp.*, No. 57, May Term 1853, to Wood & Oliver, and on the 13th May 1853, the sheriff acknowledged and delivered a deed to them.

On the 6th day of July 1853, Wood & Oliver, by their attorney, redeemed the land from the operation of the several tax sales.

On the 26th of July 1855, Wood & Oliver, by their attorney, B. F. Lucas, entered into an agreement by which they agreed to sell and convey the land in controversy to C. Smathers, the present defendant, for the sum of $600 ; and on the 12th day of April 1860, they executed and delivered him a deed for the same. Smathers took possession of the land immediately on his purchase in 1855, and remained in possession ever since.

On the trial, the plaintiff, having given evidence that the land was occupied in 1848 by one Vastbinder, who cleared a small garden spot and left in 1849, and that in 1850–51 it was lying waste, with the shanty and fence down ; offered the deposition of John Heath, Jr., to prove that his uncle, John Heath, Sr., had left the county in 1842 or 1843, for Brookville in Indiana, and continued to reside there until 1855 ; that witness had informed him of the sale of this land for taxes, and received from him, in May 1852, a power to redeem it, but that, as his uncle was indebted, the land never was redeemed. This was objected to by defendant, and rejected by the court.

The evidence of defendant's title as above stated was objected to by plaintiff, but admitted by the court under exception.

The plaintiff requested the court below (McCalmont, P. J.,) to charge the jury that if Vastbinder had abandoned it and that it had again assumed its original condition as wild land, as was testified to by Geer and Goup, it was subject to tax in 1851. The court answered this in the negative. The plaintiff asked the court to instruct the jury that the judgment was void and passed no title to him, that he could not redeem. This the court

[Arthurs *v.* Smathers.]

answered in the affirmative. The plaintiff further asked the court to instruct the jury that if the judgment was voidable only, he got no lien on the land, as the plaintiff owned it by sale to him before the entry of the judgment. That the judgment would not be a lien on the right to redeem, which the court answered in the affirmative.

The court further charged the jury that the plaintiff got no title by the sale in the seated list, as there was no notice to the owner by the treasurer. That he got no title in the sale of 1852, in the unseated list.

The sale of the tract as seated land conveyed no title, notice not having been given by the treasurer. As to the sale of the land as unseated, it appears by the evidence, and as asserted in the plaintiff's first point, that the land was actually occupied and seated up to 1849. It must be presumed to be with the consent of the owner. It was so assessed, and could not be transferred without the owner's assent, to the unseated list, so as to support a sale for the taxes of 1851; and if it could, the transfer should have been made by the commissioners. The marking of unseated on the duplicate opposite the name of John Heath in the seated list, without showing by whom, and not being actually transferred on to the seated list, did not warrant a sale for taxes as unseated.

The verdict under these facts must be for the defendant.

The jury found accordingly, and judgment being entered thereon, the defendant sued out this writ, and assigned for error,

1st. The court erred in not admitting the deposition of John Heath, Jr., as it showed John Heath his uncle had notice of the sale in the seated list more than one year before the alleged redemption by Wood & Oliver.

2d. It showed that the owner lived out of the state, and that the treasurer could not serve notice on him. There is nothing to show that the treasurer knew where he was. He was not subject to a summons or *scire facias* in Pennsylvania.

3d. In charging the jury "that the sale in the seated list gave no title until notice given by the treasurer to the owner," plaintiff contends that it gives title in the seated or unseated land as soon as the deed is delivered to the purchaser, that he has an estate upon condition, or at least he has an inceptive title such as he is entitled to recover against an intruder.

4th. The plaintiff requested the court to instruct the jury if they believe that the land was seated in 1848 and 1849 by Vast-binder residing on the same and having a small garden spot cleared; that it became abandoned in 1850 and 1851, as is testified by Geer and Goup; it was rightly assessed in the *unseated list in* 1851. This the court erred in answering in the negative.

5th. The court erred in instructing the jury, " The marking

of unseated on the duplicate following the name of John Heath in the seated list, without showing by whom, and not being actually transferred to the unseated list did not warrant a sale for taxes as unseated."

*G. W. Zigler*, for plaintiff in error, cited and relied on Troutman *v.* May, 9 Casey 445; Kennedy *v.* Daily, 6 Watts 273; Harbison *v.* Jack, 2 Watts 124; Gibson *v.* Robbins, 9 Watts 156; Foster *v.* McDevit, 5 W. & S. 359; Wilson *v.* Waterson, 4 Barr 214; Cromelien *v.* Brink, 5 Casey 522; Caldwell *v.* Walters, 6 Harris 79; Dorrance *v.* Scott, 3 Wh. 309.

*B. F. Lucas*, for defendant in error, cited the Act of 1844, on the subject of sales of seated land, which requires notice to be given by the treasurer of the county; and Milliken *v.* Benedict, 8 Barr 169. As to the judgment against Heath, he relied on Fetterman *v.* Murphy, 4 Watts 424.

The opinion of the court was delivered, January 7th 1861, by THOMPSON, J.—The first three assignments of error, nominally but two in fact, relate to the same thing : the notice required to be given to the owner of seated lands sold for taxes under the provisions of the Act of 29th April 1844 : Dig. 791. It is there provided that " the owner or owners of all such lands shall have the right to redeem them at any time within one year after receiving actual *notice from the treasurer* of the county where such lands lie, that they have been sold," &c.

The supposed materiality of the testimony of John Heath, which was rejected by the court, consisted in proving that the witness, not the treasurer, but a relative of the owner of the land, had informed the latter of the sale of the land for taxes, and that he was authorized by him to redeem it, but did not.

. Notice of the sale was the object of the testimony. This was very important, if it had been from the proper source, but it was not. The treasurer is the party to give it, by the express terms of the statute. We see no alternative, nor are we disposed to look for any, for the requirement of the statute. The owner has a right to await the notice from the proper source, and, in the mean time, rest secure that after it does come, he has a year to redeem. Unofficial and unauthorized notice is no notice within the statute, and to hold it to be so would be a virtual fraud on the owner. It required a statutory provision to dispense with the proofs requisite in regard to ordinary sales for taxes. Under the Act of 1804, none were good, because the requisites could never be made out. The Act of 1815 remedied this by dispensing with proof of many things supposed to be requisites by the Act of 1804. But we have no dispensation of the requisites of

[Arthurs *v.* Smathers.]

notice in this case, and it is indispensable that it be given as required by the treasurer.

It will be easy for the purchaser to procure the notice to be given by him, and if he desires to avail himself of the chances of holding under the sale, he should be active in ascertaining the owner's residence, and in moving the treasurer to give the notice. The rejection of the evidence, as well as the charge on this point, were accurate.

As we have not the points of the plaintiff on our paper-books, we cannot say whether the court erred in answering them or not. The rules of this court, in 6 Harris, require the points to appear on the paper-books, when they are the foundation of any assignment of error. This has been neglected in this case, and the consequence is, that we must dismiss the assignments of error to the answer of the court to the points.

The plaintiff having shown that the land in controversy was actually seated and occupied by residence and cultivation up to, and including part at least of the year 1849, and that it was sold in 1852 for the taxes assessed for 1851, the court seemed to be of opinion that the period of dereliction of possession was too short to give the character of unseated to the premises. At the time of the assessment, but little over one year had transpired. It could not have returned to a state of nature in that time. This was obvious, and to this condition it must have returned to bring it within the designation of unseated. This has been frequently held. It was right, therefore, on part of the court, to hold it not subject to assessment and sale as unseated, if the facts were true. Under these circumstances, the other alleged errors were harmless, but we will notice them.

In Laird *v.* Heister, 12 Harris, followed by Thompson *v.* Chase, not reported, this court qualified, or rather perhaps explained, remarks to be found in several cases, amongst which are Larimer *v.* McCall, 4 W. & S., Commonwealth *v.* Woodside, 2 Harris, and Milliken *v.* Benedict, 8 Barr, in regard to changing lands actually unseated, from the seated list to the unseated. Those cases, in which it was said that this could not be done without notice to the owners, were, on examination, thought to be exceptional—that is, the land, it seemed, had been placed on the seated list by arrangement between the owners and the commissioners, and, in such case, it was thought necessary, to protect them from loss by a sale for taxes on the unseated list, to notify them of the transfer. It is likely the exceptional character of some of these cases may not always have been regarded, and their doctrine sometimes applied where the exceptional character did not exist. Laird *v.* Heister and Chase *v.* Thompson corrected this, and asserted that outside of these exceptional cases, the proper assessing officers could and ought to make the change

[Arthurs *v.* Smathers.]

without being put to the trouble of notifying owners of a fact of which they must already be aware, namely, that their lands were unseated, or, in default of doing so, losing the taxes. I say nothing of the policy or wisdom of the exceptions; but there was nothing favouring them in the Acts of Assembly, and outside of them it is very doubtful whether the commissioners could do any act which might embarrass or impair the assessment and collection of any species of tax which the law provided for the levy of, in a general and unexceptional way. But it is not the purpose of this opinion to disturb the decisions alluded to. It is enough to say the present case is not within their principles, and the learned judge was wrong when he said that the land in question could not be placed on the unseated list after having once been assessed as seated, without notice to the owner. It is true there is no error assigned in this portion of the charge, and we will not in this case reverse on account of it, but we thought it necessary to notice it, as by affirming the charge in manner following, we might be supposed to affirm this doctrine also.

The fifth assignment is not sustained. We do not understand the learned judge as denying that the records of the commissioners' office are evidence of assessment; the Act of 12th April 1842 expressly makes them so. Not that the marking opposite the name of the owner in an indiscriminate duplicate of seated and unseated lands, the word "unseated," would be *primâ facie* evidence of assessment in that character, but only as coupling a supposed absence of authority so to mark it, with a want of a transfer of the land to that list, so as to give jurisdiction to the treasurer to sell it, as sufficient to warrant a sale. It was certainly necessary that it should have been transferred to the treasurer's unseated list, and if not done, the sale would not be good. But while we are required to notice assignments of error as we do this; still we think no determination of the point could help the sale of 1852, so as to make a title under the circumstance noticed before, viz.: that the land was actually seated so shortly before the assessment of the tax on which it was sold.

There are other points discussed on the paper-books, but they are not upon assignments of error, such as the validity of the judgment of Wood & Oliver *v.* Heath, and we cannot notice them.

Judgment affirmed.